EAST OMAHA STREET RAILWAY COMPANY V. LEWIS N. GODOLA.

FILED MARCH 17, 1897.   No. 7126.

1. Street Railways: PERSONAL INJURY: CONTRIBUTORY NEGLIGENCE. It is not such negligence for a passenger to stand upon the platform of a crowded street car while in motion as will *per se* defeat a recovery for injuries received in consequence of the negligence of the persons in charge thereof. (*Pray v. Omaha Street R. Co.*, 44 Neb., 167.)

2. ———: CARE AND SKILL. Street railway companies are, in this state, common carriers, and as such are required to exercise more than ordinary skill and precaution in order to insure the safety of passengers upon their trains. (*Spellman v. Lincoln Rapid Transit Co.*, 36 Neb., 890.)

3. ———: COMMON CARRIERS. A street railway company, by undertaking the transportation of passengers for hire, assumes toward its patrons the relation of a common carrier, without regard to the character of the easement possessed by it in its right of way.

4. Foreign Laws: PRESUMPTIONS. As a general rule the laws of sister states are, in the absence of proof upon the subject, presumed to be the same as our own.

5. Street Railways: NEGLIGENCE: PERSONAL INJURY: DAMAGES: JUDGMENT AGAINST CARRIER. Evidence examined, and *held* to sustain the verdict and judgment complained of.

ERROR from the district court of Douglas county. Tried below before KEYSOR, J. *Affirmed.*

*V. O. Strickler*, for plaintiff in error.

*William F. Gurley* and *Frank T. Ransom*, *contra*.

POST, C. J.

The East Omaha Street Railway Company, hereafter called the defendant, is engaged in operating a suburban railway by means of electricity, the initial point of its line of road being Sherman avenue, near the eastern boundary of the city of Omaha, and its terminus at Courtland Beach, between four and five miles distant. From Sherman avenue the course of the defendant's track is due east, along what is described as Locust street, to a point about midway between the city and the Missouri river, from whence it extends north to Courtland Beach. On the 6th day of August, 1893, as alleged by the defendant in error, hereafter called the plaintiff, he took passage upon one of the defendant's trains at Courtland Beach for Omaha, and that the said defendant, in consideration of the usual fare therefor, undertook to safely carry him to his aforesaid destination; that the train upon which the plaintiff had taken passage was greatly crowded, as the defendant's servants well knew, yet notwithstanding such fact, and in disregard of their duty to the plaintiff and the other passengers thereon, the conductor and motorman in charge of said train negligently and carelessly caused the same to be run into and upon the curve of the defendant's said track at Locust street at an unusual and dangerous rate of speed, whereby the plaintiff was thrown from said train, in consequence of which he suffered personal injury, to his damage, etc. The plaintiff recovered in the district court upon the cause of action stated, and the defendant prosecutes error.

The allegations of the answer will sufficiently appear from our discussion of the questions presented by the brief and argument by counsel for the defendant.

It is first insisted that there is a failure of proof to sustain the allegation of negligence, and that the speed of

defendant's train at the time of the injury was both rea-
sonable and necessary, in view of the circumstances of
the case. But, as said by counsel for plaintiff, men in
human affairs judge largely by results; and when, as is
clearly shown by the record herein, a motor train,
crowded inside and out with passengers, is run into a
curve with such force as to toss persons seated within to
the opposite side of the car, and to throw others from the
platforms of the motor and trailer to the ground while
striving to maintain their positions thereon, a finding of
negligence fails to strike the judicial mind as either un-
reasonable or unwarranted.

In this connection a brief reference to evidence may
not be out of place. Sergeant Whalen, a police officer
of the city of Omaha, testified that he lost his hold upon
the front platform of the trailer and was thrown off when
the train struck the curve. Arthur Creighton, who was
sitting upon the dash-board of the trailer and holding
with his right hand to the hood of the car, was, as he
testified, thrown over the head of a friend and lit upon
the ground ten or fifteen feet distant. Dr. Carpenter tes-
tified that as the train struck the curve he saw several
men flying through the air and was being thrown off him-
self. John W. Parr, when asked about what occurred
when the train reached the curve at Thirteenth and Lo-
cust streets, answered: "I don't know what street it is,
but where they throwed everybody off." Philip Mc-
Larnen was asked, "What occurred when you got to that
point?" meaning the curve in question, replied: "They
went around that curve at a pretty good hickory. There
were several of them took a tumble; they rolled off like
pumpkins." Mr. Lloyd, who with his wife and son was
seated inside the motor, testified that he was thrown to
the opposite side of the car, and that the passengers were
in a state of commotion. There was evidence tending to
prove that the speed of the train when it struck the curve
was from twelve to fifteen miles an hour. Mr. Gray, the
conductor in charge, testified that he was running from

seven to ten miles an hour, and admitted that it was unsafe to go around the curve in question at a rate of speed exceeding five miles an hour.   It is true the foregoing statements are in part contradicted by the witnesses for the defendant, but the evidence, under the well established rule of this court, is, to say the least, quite sufficient to sustain the verdict upon the issue of negligence in the operation of the train.   The plaintiff was not, as a matter of law, guilty of contributory negligence in riding upon the platform of the motor.   (*Germantown P. R. Co. v. Walling,* 97 Pa. St., 55; *Nolan v. Brooklyn City & N. R. Co.,* 87 N. Y., 63; *Topeka City R. Co. v. Higgs,* 38 Kan., 379; *Matz v. St. Paul City R. Co.,* 52 Minn., 159; *Geitz v. Milwaukee City R. Co.,* 72 Wis., 307; *City R. Co. v. Lee,* 50 N. J. Law, 438; *Upham v. Detroit City R. Co.,* 85 Mich., 12.)   It is, on the other hand, as said in *Pray v. Omaha Street R. Co.,* 44 Neb., 167, evidence of negligence on the part of a street railway company to carry passengers greatly in excess of the seating capacity of its trains, and permitting them to stand upon the platforms and steps of its cars.   Again, street railway companies are, as was held in *Spellman v. Lincoln Rapid Transit Co.,* 36 Neb., 890, and *Pray v. Omaha Street R. Co., supra,* common carriers, and, as such, are bound to exercise more than ordinary skill and precaution in order to insure the safety of passengers upon their trains.   The question of the plaintiff's alleged contributory negligence was fairly submitted to the jury, and the finding upon that issue will not be disturbed in this proceeding.   This case is, upon the evidence adduced, clearly within the rule recognized in the authorities above cited.   The plaintiff's witnesses agree that the train in question was crowded to its utmost capacity, not only the space inside the cars, but the platforms of the motor and trailer.   It is further shown that the defendant was in the habit of permitting passengers to stand in the aisles and upon the platforms of its cars, and that Mr. Lazarus, who at the date named was acting in the capacity of assistant superintendent, or train

dispatcher, was present and personally gave orders for the starting of the overcrowded train. True, there was evidence tending to prove the presence of a printed card notifying passengers not to stand upon the platforms, but there was, on the other hand, evidence that the card above mentioned was not posted until after the accident which resulted in the injury complained of. It is also claimed that the conductor protested against the appropriation of the platform by passengers; but upon that point, also, the evidence is conflicting, and, as we have said, sufficient to sustain the verdict.

Complaint is made of the exclusion of evidence to prove that the defendant's line of road is constructed upon private property. The purpose of the evidence offered was, if we understand the position of counsel, to prove that the defendant company is not liable as a common carrier; but that proposition is not, it seems to us, entitled to serious consideration. The defendant, by undertaking to transport passengers for hire between Courtland Beach and the city of Omaha, assumed the relation toward its patrons of a common carrier, and the character of the easement in the right of way is wholly immaterial. (*Vide* Bouvier, Law Dictionary, title "Commercial Carrier;" Lawrence & Rapalje, Law Dictionary.)

The defendant offered to prove that the point where the accident occurred is within the state of Iowa, and which evidence was, upon the objection of the plaintiff, rejected. It does not appear from pleading or proof that the laws of Iowa recognize a different rule of liability from that which governs in this state, and in the absence of proof to the contrary the laws of that state are presumed to be the same as our own. (*Fitzgerald v. Fitzgerald & Mallory Construction Co.*, 41 Neb., 374.)

Exception was taken to the exclusion of a written report of the accident by the witness Gray, as conductor, made shortly thereafter, and which was, it is claimed, admissible for the purpose of impeachment, the execution thereof having been admitted by the witness upon his

cross-examination.   Our impression at the argument was that the statement was admissible for the purpose offered, and that its exclusion was prejudicial error, but after carefully examining it in connection with the testimony given by the witness named, we are unable to perceive any substantial conflict therein, and conclude that the defendant has no just ground of complaint on account of the ruling assigned.

There are further assignments which relate to the giving and refusing of instructions, but since the questions therein presented have been noticed in the discussion of other assignments, they do not require extended notice in this connection.   There is no error in the record and the judgment is

AFFIRMED.