JOHN F. COFFEY, ADMINISTRATOR, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 7, 1907. NO. 14,816.

1. **Street Railways: INJURIES: NEGLIGENCE: QUESTION FOR JURY.** It is a question of fact for the jury whether or not a passenger, who is riding on the lower step of the platform of a crowded street car, and who is thrown therefrom and injured by reason of the negligent operation of the car, is, by voluntarily riding in such place, guilty of such contributory negligence as will defeat a recovery.

2. **Evidence** as to the negligence of the defendant in the operation of the car examined, and *held* sufficient to require its submission to the jury.

3. **Witnesses: COMPETENCY.** A witness who sees a moving car, and possesses a knowledge of time and distance, is competent to express an opinion as to the rate of speed at which the car was moving. *Omaha Street R. Co. v. Larson,* 70 Neb. 591, followed and approved.

4. **Rulings** of the trial court on the admission and exclusion of testimony examined, and *held* not to be prejudicially erroneous.

5. **Appeal: INSTRUCTIONS.** It is not error to refuse instructions re-

quested, where the substance of the instructions requested has been embodied in the court's charge to the jury.

6. Instructions given examined, and *held* to have been properly given.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Affirmed.*

. *John L. Webster* and *W. J. Connell,* for appellant.

*Weaver & Giller, contra.*

GOOD, C.

John F. Coffey, in his representative capacity as administrator of the estate of John Nelson, deceased, brought this action to recover damages for the death of said Nelson, and alleged that Nelson on the 11th day of October, 1903, was a passenger on one of defendant's street cars, and, while riding on the rear platform of the car, was thrown off and killed; that the employees and servants of the defendant in charge of said car negligently permitted the same to become crowded, and ran the same at a high rate of speed around a curve in the defendant's railway track, thereby causing the said car to give a sudden and violent lurch, which caused Nelson to b⌐ violently thrown from the car to the pavement, thereby causing his death. Defendant in its answer denied all negligence on its part, and alleged contributory negligence on the part of Nelson, and alleged that he was intoxicated at the time of his injury. There was a trial to a jury in the court below, resulting in a verdict for $1,500 in favor of the plaintiff. The court overruled defendant's motion for a new trial and entered judgment on the verdict, from which defendant appeals to this court.

Defendant not only complains of the rulings of the trial court in the admission and exclusion of evidence and in the giving and refusing of instructions, but contends that the trial court should have directed a verdict for the defendant because Nelson came to his death solely from his own

negligence. From the evidence it appears that Nelson boarded the car of the defendant at the intersection of Sixteenth and Dorcas streets to go north on Sixteenth street in the city of Omaha; that the car was somewhat crowded, the seats all being taken, perhaps some passengers standing in the aisle, and a number of passengers standing on the back platform; that Nelson took a position on the lower step of the rear platform and remained there until the accident; that two or three times the conductor of the car requested Nelson to step up and go inside, but did not warn him of any danger, the request to step inside being given apparently to clear the way for passengers to get off and on the car. The car continued northward until it reached a point between Williams street and Pierce street, where Sixteenth street widens, the added width being all on the east side of the street, and the car tracks made a double curve in order to keep the tracks in the middle of the widened street. It is contended that the effect of running the car at a rapid rate over these curves is to sway the passengers to the west on entering the first curve, and then to the east as the car leaves the second curve to take the straight track again going north. It was at or near this point that Nelson fell or was thrown from the car. Plaintiff's testimony tended to show that the car was going at a rate of about 20 miles an hour, and defendant's testimony that the speed was only about 8 or 10 miles an hour. There was a conflict in the testimony as to whether or not Nelson was under the influence of liquor at the time of the accident. The evidence also disclosed that immediately before the accident Nelson was standing on the lower step with his back to the east and his right hand holding the rail or handhold on the car; that he held to this rail after his feet were off the step; and that, when he fell or was thrown from the car, he landed a considerable distance from the track, striking on the back of his head, and receiving injuries from which he became unconscious and soon died. It also appears that at the scene of the accident the track

inclines north toward the viaduct, so that the car was running on a down grade at the time Nelson fell, and that the car ran about 250 feet before it stopped after the accident.

Defendant contends that, since Nelson chose to stand on the lower outside step of the platform after he was requested by the conductor to come up from the step and go inside, he was guilty of such contributory negligence as a matter of law as forbids any recovery for damages. Our attention has been called to a number of cases that apparently hold that a party who elects to stand on the platform of a car is required to exercise the increased care that the increased danger entails, and that, if a passenger persists in standing on the step of the car after being warned of the danger and told to go inside, he cannot recover damages for injuries he may receive by being thrown from the car. *Nieboer v. Detroit E. R. Co.*, 128 Mich. 486; *Pike v. Boston E. R. Co.*, 192 Mass. 426; *Gaffney v. Union Traction Co.*, 211 Pa. St. 91. In the first of the above cited cases, however, it appears that the person injured had climbed upon the deadwood, or "bumper," at the rear of the car, outside of the platform. The cars were running in close proximity to each other, and the conductor suddenly stopped the car upon which plaintiff was riding, and plaintiff was caught and injured by the car following, which bumped into the rear of the car where plaintiff was standing on the deadwood. The "bumper" was not a place to be used under any circumstances by a passenger. The position the plaintiff took was an extremely dangerous and perilous one, and the dangers of riding in such a position were apparent to any person of ordinary intelligence. The facts in that case are so different from those in the case at bar we do not think that it can be of any real value in determining the question of contributory negligence in this case. In *Pike v. Boston E. R. Co.*, *supra*, it appears that the plaintff's intestate was injured, while riding upon the front platform of one of defendant's cars, in a collision between the car and

22

a repair wagon in the early hours of a dark and foggy morning. It appeared that the street car company had signs posted up on its cars giving notice that passengers riding on the front platform did so at their own risk, and that plaintiff's intestate knew and had read the notice. Morton, J., in writing the opinion, says: "In the present case the notice did not forbid passengers to ride on the front platform, but stated the terms on which, if they rode there, they would be carried, namely, at their own risk. * * * In the present case the defendant furnished a safe place for the plaintiff's intestate to ride in, and instead of riding there he rode on the front platform knowing that he thereby took the risk." Under the circumstances, he was held to have assumed the risk, and plaintiff was not entitled to recover. In *Gaffney v. Union Traction Co., supra,* it was unequivocally held that a passenger riding upon the back platform of a street car, who goes onto the step while the car is in motion and is thrown off by a sudden jerk, is guilty of such contributory negligence as will bar a recovery. But in this state the rule seems to be otherwise. In *Pray v. Omaha Street R. Co.,* 44 Neb. 167, it was held that it was not such negligence for a passenger to stand on the front steps of a crowded street car while in motion as will prevent a recovery for injuries received on account of the negligence of persons in charge thereof. The rule in this case was followed and reaffirmed in the case of *East Omaha Street R. Co. v. Godola,* 50 Neb. 906. It would seem that a street railway company, which permits the use of its platforms and steps for the carrying of passengers and collects fares from the passengers riding in such places, is bound as a common carrier to use proper precaution for the protection of the passengers riding in such positions; and, in the absence of any warning to the passenger that such position is dangerous, and in the absence of any rule of the street railway company brought to the knowledge of the passenger that it will not be liable for injuries received by passengers riding upon the platform or step, we think it can-

not be said to be negligence *per se* for a passenger to ride in such position. A passenger riding in such position does not assume the risk of injury arising from the negligent operation of the car. In this case we think it was properly a question of fact whether or not plaintiff's intestate was guilty of such contributory negligence as would bar a recovery.

The defendant further contends that there was no competent evidence in the record of any negligence on the part of the defendant that would justify the submission of the case to the jury. The negligence complained of was the overcrowding of the car and the high rate of speed. The record is replete with evidence showing beyond cavil that the car was full, that passengers were standing in the aisle, and that the rear platform was quite well filled with passengers. Three witnesses testify that the car was moving at the rate of 20 miles an hour, and there were the other circumstances that at least one passenger standing in the aisle was jostled from his feet, that passengers standing inside the car were jerked first one way and then the other by the lurching of the car, that the car ran about 250 feet after the accident before it came to a stop, and that Nelson, when he went from the car, slid 10 to 15 feet, notwithstanding the fact that when his feet struck the pavement he was still holding to the car. So, if this evidence was properly admitted, there was ample evidence to sustain the contention of the plaintiff that the car was moving at a high rate of speed, and, under the circumstances of the crowded condition of the car with passengers standing on the platform and steps, it was proper for the jury to determine whether or not the defendant was guilty of negligence which caused Nelson's death.

In this connection defendant urges that the testimony of the witnesses Johnston, Albert Elsasser and Henning Elsasser, to the effect that the car was moving at the rate of 20 miles an hour, was improperly admitted, for the reason that there was no showing that these witnesses were competent to give an opinion as to the rate of speed

at which the car was going. This question has been be-
fore this court on other occasions. In *Omaha Street R.
Co. v. Larson,* 70 Neb. 591, this language is used: "We
think that a witness who sees a moving car, and possesses
a knowledge of time and distance, is competent to express
an opinion as to the rate at which the car is moving."
This rule was sustained by numerous authorities cited in
the opinion, and is approved in the case of *Lindgren v.
Omaha Street R. Co.,* 73 Neb. 628. In the instant case
it appears that the witness Johnston had been a locomo-
tive engineer for two years, and that he was riding on the
front platform of a car following close behind the one on
which Nelson was riding. It also appears that both the
Elsassers had been residents of the city of Omaha many
years, that they lived at the time of the accident by the
side of the track in question and immediately adjoining
to the place where the accident occurred, that they both
had been in the habit of observing street cars. All of
these testified that they were able to state approximately
the speed of street cars, and from their observation of
the car in question knew and were able to state its rate
of speed. Under the rule laid down in the foregoing cases,
we think these witnesses were competent to give an opin-
ion as to the rate of speed at which the car was moving.

The defendant also contends that there was error in
permitting the witnesses Mary Blair and Anna Nelson to
impeach the defendant's witness Mead. Mead, who was the
motorman in charge of the car, on his cross-examination
was asked whether or not he had stated at the coroner's in-
quest that he was about 10 minutes behind time, and
that he was hurrying to make up time, to which he an-
swered that he had not so testified. The witnesses Blair
and Nelson testified that he had made such a statement at
the coroner's inquest. The point of the objection is that
no time and place were stated in the question propounded
to the motorman Mead. But he was asked whether or not
he had testified before the coroner's inquest, and he an-
swered that he remembered of testifying before the in-

quest. The object of the rule requiring time and place to be fixed is to apprise the witness of when and where and under what circumstances he was supposed to have made the statement to which his attention is called. In this case it appears that he recalled the fact of testifying before the coroner's inquest, and it would have been an idle form to have the statement of the exact time and place of the holding of the inquest. The witness was as fully apprised of the time and place as if it had been named in the question, and we can see no prejudicial error in not fixing the time and place in the question, especially in view of the fact that no objection was made to the form of the question when it was propounded to the motorman Mead.

The defendant complains because the court refused to strike out a portion of one of the answers of the witness Johnston. The question, answer and motion are as follows: "Q. How close were the two cars together? A. Well, we was between Williams and that first curve at the time he was thrown off the car he was on. Mr. Webster: I move to strike out that part of the statement, that he was thrown off, as not being responsive to the question." The answer does not appear to be responsive to the question, and the court should, perhaps, have sustained the motion to strike. But, while it was error on the part of the court, in view of the whole of the testimony of the witness Johnston, which showed that he was an eye-witness to the accident and saw Nelson thrown from the car and fully detailed the manner in which the accident occurred, we fail to see how this error of the court could have prejudiced the rights of the defendant. At the most, it was only a voluntary statement of the witness in which he in effect repeated evidence that had been properly admitted.

Defendant complains of the court's refusal to give instructions No. 2 and No. 4, asked by the defendant. From an inspection of the instructions given, we find that defendant's instruction No. 2 was embodied substantially in

instruction No. 8, given by the court, and that instruction
No. 4, asked by the defendant, was fully covered in the
sixth paragraph of the court's charge to the jury. As to
defendant's instruction No. 2, the same ground was cov-
ered in almost the identical language, and in instruction
No. 6 the court covered and properly instructed the jury
on the same subject matter as was contained in instruc-
tion No. 4, asked by the defendant. Under the circum-
stances no error appears from the refusal to give these
instructions.

Defendant complains of the giving of instruction No.
10 by the court, not from any misstatement of the law,
but for the reason that it is claimed that it finds no sup-
port in the evidence. Defendant contends that there was
no evidence of any unusualy swaying or jerk of the car.
This contention is not borne out by the record. There was
ample evidence in the record tending to show that there
was a violent lurching of the car at the time of the acci-
dent, and so the instruction was peculiarly applicable to
the evidence.

Defendant complains of instruction No. 7, in the follow-
ing. language: "Before plaintiff can recover, he must
go further and satisfy you by a preponderance of the evi-
dence that the defendant was guilty of some act of negli-
gence alleged in the petition." The complaint as to this
instruction is that it was vague and indefinite, in that
it does not tell the jury the precise act of negligence
alleged in the petition. But, in instruction No. 5, given
by the court, we find that the jury were told that their
inquiry should be confined to the single proposition
whether or not the car was being operated 'at a negligent
rate of speed just prior to and at the time of the accident.
There was no misstatement of the law in instruction No.
7, and, taken in connection with No. 5, the jury were
properly instructed on this question. It is not necessary
that the court should cover every point in a single in-
struction. It is sufficient if the instructions taken alto-

gether cover the issues to be submitted, to the jury for its consideration.

Instruction No. 8 is complained of for the reason that the same is said to be vague, indefinite, uncertain, confusing, and misleading. No misstatement of the law is pointed out, and we have carefully examined the instruction. While it is lengthy and complex, it contains no misstatement of legal rules so far as we can ascertain. Under the circumstances the giving of the instruction is not reversible error.

We therefore recommend that the judgment of the district court be affirmed.

DUFFIE and EPPERSON, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.