ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY
v. DUPREE.

Opinion delivered November 18, 1907.

1. MASTER AND SERVANT—WHO ARE FELLOW SERVANTS.— A car inspector
and an engine foreman, not working together for a common pur-
pose, but working in different departments of the railway service,
are not fellow servants within Kirby's Digest, § § 6658-6660. (Page
378.)

2. SAME—VIOLATION OF RULE—CONTRIBUTORY NEGLIGENCE.—Where a mas-
ter promulgates a rule for the safety of his servants, and a servant
is injured while in violation of that rule and on account of such
violation, the court will ordinarily declare him, as a matter of law,
guilty of contributory negligence. (Page 379.)

3. SAME—ABROGATION OF RULE.—Where a rule promulgated by a mas-
ter for the safety of his servants has been habitually violated, and
such violation is known to or acquiesced in by the master, it will
be held that the rule has been abrogated. (Page 380.)

4. SAME—LIABILITY OF MASTER.—Where a car inspector, while engaged
in making an inspection under a car, was injured by having the
car pushed on him by a switch engine in charge of one who was
not a fellow-servant, the master would not be liable unless the en-
gineer in charge of such engine knew that the inspector was under
the car, or that it was part of his duty to be there while making his
inspection. (Page 380.)

5. SAME—CONTRIBUTORY NEGLIGENCE.—A master will not be liable for
injuries suffered by a car inspector while engaged in making an in-
spection under a car if the inspector was guilty of negligence in
going under the car without giving notice that he was going to place
himself in such position, unless such position was known to be a
part of his duty, and it was also known that he was making such
inspection. (Page 380.)

6. INSTRUCTIONS—FAILING TO MAKE SPECIFIC REQUESTS.—Appellant can-
not complain because the court gave merely general instructions if
he failed to request that specific instructions be given. (Page 381.)

7. APPEAL—INCOMPETENT TESTIMONY—GENERAL OBJECTION.—Where the
answer of a witness to a proper question was partly competent and
partly incompetent, an objection to the testimony which fails to
point out the incompetent testimony is insufficient. (Page 381.)

Appeal from Lawrence Circuit Court; *Frederick D. Fulk-
erson,* Judge; affirmed.

James Dupree sued the St. Louis, Iron Mountain
& Southern Railway Company, alleging that he was em-
ployed by defendant to inspect its cars, and that while he was
making an inspection under a car defendant's employees kicked
several cars violently against this car, causing the same to pass
over plaintiff's right arm and leg, so that plaintiff lost his right
arm and suffered the partial loss of his right leg. Defendant
denied negligence on its part, and alleged that defendant was
negligent.

The jury returned a verdict for plaintiff in the sum of
$6,000. Defendant has appealed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

1. The alleged admission of the appellant's agent, Arthur,
made at a time too remote to be a part of the *res gestae,* and
not authorized by the company, were erroneously admitted as
evidence. 52 Ark. 78; 57 Ark. 287; 61 Ark. 52; 63 Ark. 87;
67 Ark. 147; 68 Ark. 225; 19 L. R. A. 733, note; 66 Ark. 495;
70 Ark. 289; 69 Ark. 560; 80 Ark. 533; 72 Ark. 581.

2. If it be conceded that the rule for the protection of car
inspectors was not enforced, appellee was, nevertheless, guilty
of contributory negligence, as a matter of law, in violating a
rule made for his protection, and in doing so assumed the risk
of the extra hazard incident thereto. 77 Ark. 405; 85 Minn.
326; 48 Ark. 334; 98 Ill. App. 207; 79 Ark. 53; 84 Fed. 944;
15 S. W. 108; 39 S. W. 967; 154 N. Y. 474; 68 Ark. 316; 4
Thompson, Negligence, § § 4616, 4643; 94 Ga. 535; 91 N. W.
1034; 168 Mass. 579; 81 Pac. 221; 22 Col. 263; 99 Md. 471;
122 U. S. 189. A car inspector assumes the risk incident to
that employment while a train is being made up in the usual
and ordinary manner. White's Supp. Thompson, Negligence,
§ 4779; 73 S. W. 555; 160 Mass. 45; 4 Thompson, Negligence,
§ 4616; 78 Md. 249; 55 L. R. A. 908.

*W. A. Cunningham* and *Jones & Hamiter,* for appellee.

Hill, C. J. In brief, the case was this: Dupree was
a car inspector, engaged in inspecting cars of the rail-
road company at Hoxie. Arthur was an engine fore-
man in charge of the engine, switching, making up and
breaking up trains in the Hoxie yards. He and Dupree

were in different departments of service, and were not working together for a common purpose, and were therefore not fellow servants, within the meaning of sections 6658-60, Kirby's Digest. There were two kinds of inspection for cars, one called intermediate inspection, which was a general inspection without going into particular defects, and another called the interchange inspection. There was no interchange inspection in the Hoxie yards, and the inspections of Dupree were intermediate.

There is a conflict in the evidence as to the duties of the inspector in making an intermediate inspection. Dupree says that it was often necessary, in order to properly make it, to place his body under the cars; while others say that such action was not necessary for such inspection.

There was a rule of the company requiring inspectors to place in the daytime blue flags, and in the nighttime blue lights, at either end of the cars being inspected, and only the person placing the signals was authorized to take them up. These signals were to protect the cars during inspection from movement. There is testimony tending to show that this rule was habitually disregarded, and its habitual disregard known to the foreman in charge of Dupree's department; and, on the other hand, there is evidence that it was the proper way to protect the car during inspection.

About 9 o'clock, a dark rainy night, Dupree and his fellow inspector, Cooper, went to their duties of inspecting cars. According to Dupree's testimony, Arthur passed them with his switch engine and some cars, and was notified that they were engaged in inspecting certain cars, and Arthur told them that he was going to Hoxie crossing to do some work there. This trip and work would have required his absence for twenty or twenty-five minutes. Within five or ten minutes after he left, while Dupree was under a bad-order car, inspecting the same with his torch, the car was struck by Arthur's switch engine, causing Dupree the loss of an arm and a serious injury to his leg. A different version of the occurrence was given by Arthur.

The case was largely tried upon the question of whether or not the rule requiring the blue signals had been abrogated;

and the chief contention here is that there was error in certain modifications of instructions requested by the defendant which told the jury that Dupree assumed all the risks and hazards incident to his duties as car inspector; and if he failed to comply with the rule, and was injured while failing to comply with it, such injury was one of the assumed risks of his employment, for which he could not recover, and that he would be guilty of contributory negligence in undertaking to do this work without obeying the rule; which were modified by the court by stating that such was the law unless said rule was abrogated. The jury was instructed that the burden of showing the abrogation of the rule was upon the plaintiff, and correctly instructed what was necessary in order to show that the rule was abrogated. Where a master promulgates a rule for the safety of his servants, and a servant is injured while in violation of that rule and on account of the violation thereof, then the court will declare him, as a matter of law, guilty of contributory negligence. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405, and authorities cited. But where such rule is habitually violated, and such violation is known to or acquiesced in by the master, so that it amounts to an abandonment of the rule, then evidence of such habitual violation is admissible for the purpose of repelling the inference which would otherwise be drawn from the existence of the rule itself. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway, supra.*

The question of the existence or abrogation of the rule was properly submitted to the jury; and there is sufficient evidence to sustain a finding either way on that issue.

But the real question of the case was not so much the existence or abrogation of that rule as it was the negligence of Arthur in hitting the cars while Dupree was inspecting them, and the contributory negligence of Dupree in the manner in which he inspected the cars and in inspecting them without taking proper precautions for his safety while so engaged. If it was not a part of Dupree's duty to be under the car, or in other position of danger, while inspecting a car, then it would not be negligence to move the car while the inspection was in progress. If Arthur had known that Dupree was inspecting the cars, and that it was often a part of Dupree's duty to be under

a car while performing his inspection, then the company would be liable if Arthur suddenly moved the cars without notifying Dupree that he was going to do so. On the other hand, it would be contributory negligence on Dupree's part to go under a car without taking precaution by some sort of notice to a person operating a switch engine about them that he was going to place himself in such position, unless such position was known to be part of the inspector's duty, and it was also known that he was making such inspection.

There is a sharp conflict in the evidence upon these points, and no specific instruction was given upon them; but there were general instructions given as the law of negligence and contributory negligence. These issues of fact should have been sharply drawn in appropriate instructions and sent to the jury for decision. Instead of that, general instructions were given as to negligence and contributory negligence, and many specific instructions asked by the defendant, as to the law of assumed risk and contributory negligence, were given, some with proper modification as to the abrogation of the said rule.

In this state of the record, the appellant can not ask for a reversal on account of such instructions. *Western Coal & Mining Co.* v. *Jones,* 75 Ark. 76.

The admission of testimony as to certain statements made by Arthur next day is urged as erroneous. These statements would not be admissible as a part of the *res gestae;* nor as declarations of the agent, for they were not made while performing the duties of this agency. They are sought to be sustained as contradictory of his testimony. The questions asked the witness called for testimony fairly contradictory of Arthur's testimony. Part of the answers went beyond a fair contradiction; but part was competent. The fact that the answers contained more than the question called for, and that some incompetent matter was incorporated into them, does not call for reversal unless the incompetent matter was prejudicial and properly objected to. This testimony was rather loosely drawn out, and the objections to it are not as specific as they might have been, and the court fails to find that any reversible error in this respect was committed.

Affirmed.